

EXHIBIT

11

FILE COPY

John D. Winter (JW-3252)
Daniel S. Ruzumna (DR-2105)
Nicolas Commandeur (NC-4280)
Krista Caner (KC-7358)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

*Attorneys for Alavi Foundation and*
*650 Fifth Avenue Company*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
EDWENA R. HEGNA, Executrix of the Estate of :
Charles Hegna, Late of Sterling, Virginia, :
individually, and STEVEN A. HEGNA, CRAIG M. :
HEGNA, LYNN MARIE HEGNA MOORE, AND :
PAUL B. HEGNA, :
:
Plaintiffs, :
:
v. :                   Case No. 18 MS 0302
:                   (Judgment No. 02-2472)
ISLAMIC REPUBLIC OF IRAN and THE :
IRANIAN MINISTRY OF INFORMATION AND :
SECURITY, :
:
Defendants. :
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### ALAVI FOUNDATION'S AND 650 FIFTH AVENUE COMPANY'S
### MEMORANDUM IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

3240517v.4

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................2

      A.    The Alavi Foundation ...............................................................................2
      B.    Fifth Avenue Company..............................................................................3
      C.    The Underlying Litigation .........................................................................4

ARGUMENT .......................................................................................................................6

I.     The Hegna Plaintiffs Cannot Force the Foundation to Liquidate its Interest in 650 Fifth Avenue ....................................................................................................6

II.    A Forced Sale of 650 Fifth Avenue Would Upset the Status Quo Without a Legal or Factual Basis.............................................................................................9

    III.    A Forced Sale of 650 Fifth Avenue Would Cause Substantial Harm to the Foundation as the Majority Owner ...................................................................10

CONCLUSION...................................................................................................................12

3240517v.4

## TABLE OF AUTHORITIES

### CASES

*Anacomp, Inc. v. Shell Knob Servs.,*
No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223 (S.D.N.Y. Jan. 7, 1994), *aff'd*
29 F.3d 621 (2d Cir. 1994)...................................................................12

*In re Elmira Litho, Inc.,*
174 B.R. 892 (Bankr. S.D.N.Y. 1994)........................................................10

*Dole Food Co. v. Patrickson,*
538 U.S. 468 (2003)....................................................................................8

*Golub v. Arlumsa Dev. Corp.,*
No. 83 Civ. 2184, 1983 U.S. Dist. LEXIS 16935 (S.D.N.Y. May 16, 1983)..............10

*Greenbaum v. Assa Corp.,*
No. 09 Civ. 553 (RJH) (S.D.N.Y. filed Jan. 20, 2009).............................................3, 5

*Greenbaum v. Iran,*
1:09-cv-00564 (S.D.N.Y. filed Jan. 21, 2009) .............................................................5

*Hegna v. Islamic Republic of Iran,*
402 F.3d 97 (2d Cir. 2005).......................................................................................4

*J.A. Preston Corp. v. Fabrication Enters., Inc.,*
502 N.E.2d 197 (N.Y. 1986).....................................................................................12

*MacDonald v. MacDonald,*
641 N.Y.S.2d 347 (N.Y. App. Div. 1996) ..................................................................8

*Meistrich v. Executive Monetary Mgmt.,*
No. 83 Civ. 1636, 1984 U.S. Dist. LEXIS 23251 (S.D.N.Y. Sept. 27, 1984) ..............6

*Miller v. Iran,*
No. 1:09-cv-00166 (S.D.N.Y. filed Jan. 8, 2009).......................................................5

*Princeton Bank & Trust Co. v. Berley,*
394 N.Y.S.2d 714 (NY App. Div. 1977) ..........................................................6, 7, 9

*Rubin v. Iran,*
No. 1:09-cv-00165 (S.D.N.Y. filed Jan. 8, 2009).......................................................5

*St. Paul Fire & Marine Ins. Co. v York Claims Serv.,*
765 N.Y.S.2d 573 (2003)...........................................................................................9

*Sunward Elecs. v. McDonald,*
    362 F.3d 17 (2d Cir. 2004)..............................................................................9

*United States v. All Right, Title, and Interest of Assa Corp.*
    08 Civ. 10934 (RJH) (S.D.N.Y. filed Dec. 17, 2008) ...................................5

## STATUTES

28 U.S.C. 1603(b) ............................................................................................8

107 P.L. 297, § 201(a), 116 Stat. 2322 ...........................................................4

107 P.L. 297, § 201(d)(2)(A), 116 Stat. 2322...............................................7, 8

I.R.C. § 4940  ...................................................................................................11

I.R.C. § 4942  ...................................................................................................11

N.Y. Partnership Law § 52 (2009)....................................................................6

## MISCELLANEOUS

Exec. Order No. 13382, 70 Fed. Regs. 38,567 (June 28, 2005) .........................7

Through their undersigned counsel, the Alavi Foundation (the "Foundation") and the 650 Fifth Avenue Company (the "Fifth Avenue Company") respectfully submit this memorandum in opposition to the application of Edwena R. Hegna, Executrix of the Estate of Charles Hegna, Steven A. Hegna, Craig M. Hegna, Lynn Marie Hegna Moore, and Paul B. Hegna (collectively, the "Hegna Plaintiffs") seeking a judicial sale of the real property located at 650 Fifth Avenue, New York, New York, ("650 Fifth Avenue" or the "Building"), which application was brought by Order to Show Cause entered on March 27, 2009.

## PRELIMINARY STATEMENT

After having served writs of execution and notices of garnishment against the minority interest of Assa Corporation ("Assa") in the Fifth Avenue Company—a partnership made up of Assa, as the 40% partner, and the Foundation, as the 60% partner—the Hegna Plaintiffs ask this Court to order the judicial sale of the partnership's primary asset, a 36-story office building located in the heart of midtown Manhattan.  In so doing, the Hegna Plaintiffs effectively seek to force the Foundation to liquidate its 60% interest in the building, despite the fact that the Hegna Plaintiffs have asserted no claim against or entitlement to the Foundation's property.

The Hegna Plaintiffs' application is contrary to fundamental tenets of New York partnership law, which prohibits a party from seeking to execute upon a partnership's assets based upon a claim against an individual partner, and should be summarily rejected.  Moreover, under New York's Not-For-Profit Corporation Law (the "NPCL"), the Foundation's directors have a duty to act in the best interests of the Foundation, which applies to investment and financial decisions.  A forced sale of the Building at 650 Fifth Avenue would prevent the Board of Directors from fulfilling its duties to determine whether the sale of the Building is in the best

3240517v.4

interests of the Foundation, and therefore would be in contravention of general principles of the NPCL. Liquidating the building in a rushed sale during one of the worst real estate markets in recent history would rob the Foundation of its only significant source of income and subject it to potentially serious tax obligations.

The Hegna Plaintiffs fail to offer any meaningful justification for their extraordinary application. They do not suggest—much less cite reliable evidence—that the building is about to be sold or stripped of its value. Indeed, Assa's interest in the Fifth Avenue Company is already subject to a post-complaint protective order issued by this Court in connection with the United States Government's civil forfeiture action against Assa's property and, therefore, cannot be transferred. Accordingly, the status quo will be maintained if the application is *denied*, not granted, and the Hegna Plaintiffs' claim against Assa's 40% interest can be satisfied if and when there is a determination from this Court that they are entitled to such relief.

## BACKGROUND

### A.    The Alavi Foundation

The Alavi Foundation is a New York not-for-profit corporation, which the Internal Revenue Service has determined to be a charitable organization described in section 501(c)(3) of the Internal Revenue Code. (June 18, 2009 Declaration of Nicolas Commandeur ("Commandeur Decl."), Exhs. A & G.) The Foundation was duly organized pursuant to New York's Not-For-Profit Corporation Law in 1973. (*Id.*, Exh. A.) Since its organization, the Foundation has been in compliance with all applicable federal and state registration and reporting requirements.[1]

---

[1] The facts set forth in the background section of this Memorandum should not be in dispute, and the vast majority of this factual information regarding the Foundation is confirmed through

3240517v.4

The Foundation's mission is to promote and support Islamic culture and the study of Persian language, literature, and civilization in the United States. (Commandeur Decl., Exh. D at 1.) The Foundation fulfills this mission by financially supporting charitable and philanthropic causes through educational, religious, and cultural programs. (*Id.*) The Foundation's activities are funded by the rental income generated from its ownership interest in the Fifth Avenue Company, which in turn owns and manages the building located at 650 Fifth Avenue in midtown Manhattan. (*Id.*, Exh. H, ¶¶ 6, 8.) With limited exception, the Foundation's grants and loans are directed to entities and individuals in the United States or Canada. Consistent with Treasury Department requirements, the Foundation's donations are made to entities that are also recognized 501(c)(3) organizations. (*Id.*, Exh. D. at 3.) The Foundation's charitable works include making grants to colleges and universities; loans to students to study at American universities; donations to Persian schools and Islamic organizations; and grants to Persian art and literature programs. (*Id.*, at 1.) The Foundation also made a Department of Treasury-approved donation to Mercy Corps intended to help victims of the massive 2003 earthquake in the Iranian city of Bam. (*Id.*, Exh. H, ¶ 2.)

**B.      Fifth Avenue Company**

Fifth Avenue Company is a duly authorized partnership organized under the laws of New York. (Commandeur Decl., Exh. B.) It consists of two partners: the Foundation, which holds a 60% stake in the partnership, and Assa, which owns a 40% stake. (*Id.*, Exh. C. at 2.) Since 1989, when Assa first acquired an interest in the Fifth Avenue Company, the Foundation has acted as the managing partner. (*Id.*, Exh. B. at 21-22; 24-25.) The Fifth Avenue Company's

---

documentary evidence attached to the supporting Declaration of Nicolas Commandeur. The Foundation also incorporates by reference the June 18, 2009 Declaration of Hanieh Safakamal filed on this date in the consolidated action captioned, *Steven M. Greenbaum v. Assa Corp.*, No. 09 Civ. 553 (RJH) (S.D.N.Y.). (Commandeur Decl. Exh. H.)

primary asset is 650 Fifth Avenue, a 36-story office building located in New York City at Fifth

Avenue and 52nd Street. (*Id.*, Exh. B. at 2-3.) The Fifth Avenue Company is responsible for

managing and maintaining the building, and periodically makes distributions of profits from

rental income to the two partners. (*Id.*, Exh. B.)

### C.    The Underlying Litigation

The Hegna Plaintiffs seek to execute upon a default judgment obtained in 2002 in

the United States District Court for the District of Columbia against the Islamic Republic of Iran

and the Iranian Ministry of Information and Security relating to the murder of Charles Hegna.

The Hegna Plaintiffs were awarded $42 million in compensatory damages, of which they have

collected more than $8 million from the United States Government pursuant to the Victims of

Trafficking and Violence Protection Act ("VTVPA") as amended by the Terrorism Risk

Insurance Act ("TRIA").[2] *See Hegna v. Islamic Republic of Iran*, 402 F.3d 97, 99 (2d Cir.

2005).

On December 29, 2008, the Hegna Plaintiffs obtained writs of execution from this

Court, which were caused to be served by the United States Marshals Service upon the

Foundation and the Fifth Avenue Company seeking assets of "the Islamic Republic of Iran, its

agencies and instrumentalities, including, but not limited to, Bank Melli Iran, Assa Corporation

and/or Assa Co. Limited (entities owned or controlled, directly or indirectly by Iran) and/or one

Mohammad Hassan Dehghani Tafti." (Commandeur Decl., Exh. E. at 1.) The writs of execution

did not seek any assets held by the Foundation. On January 23, 2009, the Foundation's counsel

responded to counsel for the Hegna Plaintiffs, noting that the Foundation did not have any funds

owed to Iran or any of its agents or instrumentalities, and that Assa's interest in 650 Fifth

---

[2] Although the Hegna Plaintiffs were also awarded $333 million in punitive damages as part of the default judgment, TRIA only provides a mechanism for the collection of compensatory damages. *See* TRIA 107 P.L. 297, § 201(a), 116 Stat. 2322, 2337; *Hegna*, 402 F.3d at 98-99.

Avenue was already subject to the post-complaint protective order entered by this Court on December 17, 2008 in *United States v. All Right, Title, and Interest of Assa Corp.*, 08 Civ. 10934 (RJH) (S.D.N.Y.). (Commandeur Decl., Exh. F.) The Hegna Plaintiffs did not respond to this January 23 letter.

The Hegna Plaintiffs' action is one of several pending before this Court involving an effort to execute upon an interest in 650 Fifth Avenue in satisfaction of a judgment against the government of Iran. *See also Rubin v. Iran*, No. 1:09-cv-00165 (S.D.N.Y. filed Jan. 8, 2009); *Miller v. Iran*, No. 1:09-cv-00166 (S.D.N.Y. filed Jan. 8, 2009); *Greenbaum v. Iran*, 1:09-cv-00553 (S.D.N.Y. filed Jan. 20, 2009); and *Greenbaum v. Iran*, 1:09-cv-00564 (S.D.N.Y. filed Jan. 21, 2009). These actions followed on the heels of the forfeiture complaint filed by the United States seeking Assa's interest in the Fifth Avenue Company. *See United States v. All Right Title and Interest of Assa Corp.*, 08 Civ. 10934 (RJH) (S.D.N.Y.).

Nearly three months after obtaining the writs of execution, the Hegna Plaintiffs brought the present application seeking a judicial sale of 650 Fifth Avenue, *i.e.,* that the premises located at 650 Fifth Avenue, New York, New York, "be condemned and sold at public auction with the proceeds turned over to the Hegna judgment creditors." (Order to Show Cause 2.) They brought this application by way of an Order to Show Cause, entered on March 27, 2009, and served upon undersigned counsel on March 31.[3]

---

[3] Although the Hegna Plaintiffs have only alleged a claim to execute on Assa's interest in 650 Fifth Avenue, they nevertheless make certain unsubstantiated allegations against the Foundation and the Fifth Avenue Company. Specifically, the Hegna Plaintiffs assert that the Fifth Avenue Company is an "alter ego" of Bank Melli. (Hegna Br. 8.) The Hegna Plaintiffs also assert that the Foundation "disguised" Bank Melli's interest in the Fifth Avenue Company. (Hegna Br. 8-9.) There is no evidence to support these allegations; they are simply false.

3240517v.4

## ARGUMENT

### I.   The Hegna Plaintiffs Cannot Force the Foundation to Liquidate its Interest in 650 Fifth Avenue

The Hegna Plaintiffs cannot force the sale of the building at 650 Fifth Avenue because the Hegna Plaintiffs' claim is only against Assa and not against the partnership or the other partner, the Foundation. New York Partnership Law defines a partner's interest in the partnership as "his share of the profits and surplus." N.Y. P'Ship Law § 52 (Consol. 2009). Only this share of the partnership's profits and surplus can properly be subject to attachment or execution in enforcing a judgment against an individual partner—not the partner's interest in the underlying assets of the partnership.[4] *See Princeton Bank & Trust Co. v. Berley*, 394 N.Y.S.2d 714, 719 (NY App. Div. 1977) (holding that judgment creditor could only attach judgment debtor's share of the partnership's profits and surplus, not real properties that were owned by the partnership).

Instead, attempts at executing against the partnership's property where only a partner is the judgment debtor will be "of no avail, since the only asset to which the levy [can] attach [is the partner's] interest, 'his share of the profits and surplus.'" *Princeton Bank and Trust*, 394 N.Y.S.2d at 720. Neither "specific partnership property" nor "the right to participate in management" are subject to execution. *Meistrich v. Executive Monetary Mgmt.*, No. 83 Civ. 1636, 1984 U.S. Dist. LEXIS 23251, at *4 (S.D.N.Y. Sept. 27, 1984). The judgment creditor may only seek attachment or execution as to the partner's interest, the partner's share of profits

---

[4] To the extent the Court were to consider ordering a judicial sale of Assa's interest in the Fifth Avenue Company, the Foundation would be entitled under the terms of the partnership agreement to a right of first refusal. *See* Partnership Agreement of 650 Fifth Avenue Company, Article XVII, Right of First Refusal (July 31, 1989) (Commandeur Decl., Exh. B at 26-29).

and surplus, which requires service on the remaining partners as garnishees. *Princeton Bank and Trust*, 394 N.Y.S.2d at 720.

Despite this clearly recognized partnership law, Hegna Plaintiffs seek to compel a judicial sale of 650 Fifth Avenue by alleging that the *Building* is a "blocked asset" under TRIA upon which they can execute their judgment against Iran. (Hegna Br. 11-12.) The Hegna Plaintiffs are wrong. TRIA defines "blocked assets" to include assets held by entities that have been specially designated under the International Emergency Economic Powers Act ("IEEPA"). *See* TRIA 107 P.L. 297, § 201(d)(2)(A), 116 Stat. 2322, 2339. Pursuant to Executive Order No. 13382, the U.S. Treasury Department is empowered under IIEPA to block assets by specially designating those entities who are "weapons of mass destruction proliferators and their supporters." 70 Fed. Regs. 38,567 (June 28, 2005). While the Treasury Department's Office of Foreign Assets Control ("OFAC") has designated *Assa* as an entity whose assets are blocked, (*see* OFAC Specially Designated Nationals and Blocked Persons, June 12, 2009, http://www.ustreas.gov/offices/ enforcement/ofac/sdn/t11sdn.pdf), neither the Foundation nor the Fifth Avenue Company have *ever* been designated as an entity whose assets are "blocked assets" under TRIA. Accordingly, the Foundation's 60% indirect interest in the building is not in any way blocked.

Nor does OFAC's designation of Assa mean that 650 Fifth Avenue is a blocked asset. This is so because Assa *does not own 650 Fifth Avenue*. Rather, it owns only a 40% interest in the partnership—the Fifth Avenue Company—that owns 650 Fifth Avenue. Whether the Hegna Plaintiffs are ultimately permitted to execute upon Assa's 40% interest is a matter that will need to be resolved by this Court, and Assa has indicated that it will vigorously challenge

such execution. But there can be no dispute that it is this 40% interest—and only this 40% interest—that the Hegna Plaintiffs can seek to execute upon as a "blocked asset" under TRIA.

The Hegna Plaintiffs' application for a judicial sale of 650 Fifth Avenue asks this Court to ignore the fact that Assa is a separate entity from the Foundation and the Fifth Avenue Company. Neither the Foundation nor the Fifth Avenue Company have been specially designated under IIEPA. Accordingly, property held by them cannot be a "blocked asset" under TRIA. *See* TRIA, 107 P.L. 297, § 201(d)(2)(A), 116 Stat. 2322, 2334, (defining "blocked asset" as those assets "seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of [IEEPA]"). And the Hegna Plaintiffs offer no other theory outside of TRIA upon which they would be entitled to execute their judgment upon property owned by the Foundation or the Fifth Avenue Company. Nor could they. As explained in the Foundation's February 6, 2009 letter to the Court seeking permission to file a motion to dismiss in the *Greenbaum* action (and as is further developed in that motion to dismiss), neither the Foundation nor the Fifth Avenue Company is as a matter of law an "agency or instrumentality" of Iran under the terms of the FSIA.[5]

The fallacy of the Hegna Plaintiffs' application is manifest from the fact that they are seeking to do something that not even Assa would be entitled to do under the partnership agreement, *i.e.* force a sale of the Building. *See MacDonald v. MacDonald*, 641 N.Y.S.2d 347, 348 (N.Y. App. Div. 1996) ("Creditors of the partner cannot reach [partnership property] without

---

[5] Specifically, neither the Foundation nor the Fifth Avenue Company meets the statutory definition of an "agency or instrumentality" as the terms are defined by § 1603(b) of the Foreign Sovereigh Immunities Act ("FSIA"). *See* 28 U.S.C. 1603(b). The FSIA requirements are to be strictly construed. *See Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). The Foundation, which has been an independent New York charitable organization for over 30 years, simply does not meet the FSIA requirements. And because the Foundation is not an "agency or instrumentality," neither is the Fifth Avenue Company, of which the Foundation holds a majority interest.

the consent of all of the partners, because a partner has no right to possess partnership property for any purpose other than those of the partnership"). Therefore, because 650 Fifth Avenue is held by the partnership, the Hegna Plaintiffs cannot even execute their judgment upon Assa's interest in the Building, much less force a judicial sale of property. At most, the Hegna Plaintiffs are entitled to seek garnishment of Assa's 40% interest in the profits of the Fifth Avenue Company, which they have already done. *Princeton Bank & Trust*, 394 N.Y.S.2d at 719-721 (holding that execution against real estate owned by the partnership was unavailable and that the only attachable asset was the partner's interest, which required service on the other partner as garnishee).

## II.    A Forced Sale of 650 Fifth Avenue Would Upset the Status Quo Without a Legal or Factual Basis

Even if the Hegna Plaintiffs were able to force the partnership to act on behalf of its claim to Assa's minority interest, they cannot satisfy the steep burden necessary to upset the status quo and permanently deprive the Foundation of its ownership interest in 650 Fifth Avenue. Mandatory preliminary injunction relief – such as that sought here forcing a judicial sale—is strongly disfavored. *See Sunward Elecs. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (holding that threshold showing for a mandatory preliminary injunction is much higher than for a prohibitory injunction because the movant must demonstrate a "clear" or "substantial likelihood of success"). It is reserved for situations where such emergency, interim relief is necessary to maintain the status quo. *See St. Paul Fire & Marine Ins. Co. v York Claims Serv.*, 765 N.Y.S.2d 573, 575 (2003). ("[T]he ordinary purpose of preliminary injunctive relief . . . is to maintain the status quo and to prevent any conduct which might impair the ability of the court to render final judgment.").

3240517v.4

The resolution of the various enforcement actions and the related forfeiture action will involve complicated legal and, possibly, factual issues. With respect to the Hegna Plaintiffs' action, Assa has made clear that it intends to defend against the claims, and the United States has indicated that it is considering whether to intervene and seek a stay. It would be imprudent to force the sale of this significant real property before any of those issues are resolved.

There is no suggestion that anyone has plans to transfer or secret the assets at issue. Indeed, such activities are prohibited by this Court's protective order in the forfeiture case. The only justification offered by the Hegna Plaintiffs in support of their request for rash action is a vague reference to "[c]urrent economic conditions affecting commercial real estate in this District…" (Hegna Br. 13.) This type of unsupported, generalized speculation that the value of 650 Fifth Avenue could go down while these actions are pending is hardly sufficient to compel a judicial sale. *Cf. In re Elmira Litho, Inc.*, 174 B.R. 892, 902-903 (Bankr. S.D.N.Y. 1994) (holding that creditor appealing bankruptcy stay barring actions on liens has the burden of proving loss of value in the collateral or threat of loss in value); *Golub v. Arlumsa Dev. Corp.*, No. 83 Civ. 2184, 1983 U.S. Dist. LEXIS 16935, *12-16 (S.D.N.Y. May 16, 1983) (denying plaintiff's request for appointment of a receiver pursuant to NY CPLR 6401 because plaintiff failed to prove the type of specific risk of transfer or loss in value of the asset to justify such a "drastic remedy").

### III.   A Forced Sale of 650 Fifth Avenue Would Cause Substantial Harm to the Foundation as the Majority Owner

The Hegna Plaintiffs' requested relief of a judicial sale—besides being improper as a matter of law—would also cause significant harm to the Foundation. Virtually all of the Foundation's income derives from the rental income stream generated by 650 Fifth Avenue. The Foundation depends upon this ongoing revenue to satisfy commitments it has made to various

10

charitable organizations. Eliminating that revenue stream and transforming it into cash would result in serious tax consequences for the Foundation. First, a liquidation of the asset would presumably result in significant capital gains, which would in turn result in substantial tax liabilities for the Foundation. See I.R.C. § 4940. Second, the Foundation is required by statute (as a private charitable foundation) to donate five percent of its investment accounts. See I.R.C. § 4942. It has historically done this through donating the money that it earns from the rental income on 650 Fifth Avenue. If that asset was liquidated, the Foundation would be forced to find some other means of generating at least a five percent return on what would be a substantial cash asset; otherwise, it would effectively be forced to draw down upon its endowment to satisfy its statutory obligations. Finding an investment in the current economic climate that could achieve that type of return would be difficult, and the Foundation should not be compelled to do so.

Moreover, a forced judicial sale would inevitably result in a below-market return for the Foundation. Unlike the sale of stocks, bonds, or other easily liquidated assets, there are significant transaction costs involved in the sale of real estate. This is especially true with respect to a major office building located in the heart of midtown Manhattan. These transaction costs—i.e., brokers, legal fees, and closing costs—combined with the loss in market value associated with a forced fire sale would almost certainly be in the millions of dollars. Moreover, while the Hegna Plaintiffs' assert that "[c]urrent economic conditions affecting commercial real estate in this District warrant prompt action," market conditions actually counsel against forcing a sale now. (Hegna Br. 13.) A judicial sale would compel the Foundation to "lock in" its losses, selling in one of the worst markets in decades. The Hegna Plaintiffs speculate in their application that the real estate market may decline in the next six months; but there can be no

11

doubt that the Foundation will suffer serious long-term harm if it is permanently deprived of its interest in the property that has funded its charitable work over the last thirty years. The Foundation has no interest in such a sale and should not be forced to do so. It is better able to maximize the value of the asset through continued reliance on the rental income derived from it.

In the event that the Court were inclined to order a sale of 650 Fifth Avenue, then it should order the Hegna Plaintiffs to post a bond of not less than $100 million to be available to compensate the Foundation for the unnecessary transaction costs and the reduced value that would inevitably be achieved through such a sale. *See, e.g., Anacomp, Inc. v. Shell Knob Servs.*, No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223, *48-49 (S.D.N.Y. Jan. 7, 1994) *aff'd*, 29 F.3d 621 (2d Cir. 1994); *J.A. Preston Corp. v. Fabrication Enters., Inc.*, 502 N.E.2d 197, 199 (N.Y. 1986).

## CONCLUSION

For the foregoing reasons, the Foundation and Fifth Avenue Company respectfully request that the Hegna Plaintiffs' application for a judicial sale be denied.

New York, New York
Dated: June 18, 2009

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

By: _____

John D. Winter (JW-3252)
Daniel S. Ruzumna (DR-2105)
Nicolas Commandeur (NC-4280)
Krista Caner (KC-7358)

*Attorneys for Alavi Foundation and 650 Fifth Avenue Company*

12

Page 621

**29 F.3d 621**

**Anacomp, Inc.**
**v.**
**Shell Knob Services**

**NO. 94-7137**

**United States Court of Appeals,**
**Second Circuit.**

**June 09, 1994**

Appeal From: S.D.N.Y.

AFFIRMED.

Page 1021

# 484 N.Y.S.2d 1021

## 106 A.D.2d 926

### Fabrication Enterprises, Inc.
### v.
### J.A. Preston Corp.

### NO. 1051

### SUPREME COURT APPELLATE DIVISION

### DEC 14, 1984

4th Dept.

ORDER AFFIRMED.

Page 1016

## 500 N.Y.S.2d 1016

## 119 A.D.2d 1012

### J.A. PRESTON CORP., et al., Respondents,
### v.
### FABRICATION ENTERPRISES, et al., Appellants.

### Supreme Court of New York, Appellate Division,
### Fourth Department.

### April 4, 1986

Motion

Page 1017

for leave to appeal to the Court of Appeals and for stay of enforcement of remittitur order granted and otherwise motion denied..

CALLAHAN, J.P., and DOERR, BOOMER, GREEN and PINE, JJ., concur.

Page 520

## 509 N.Y.S.2d 520

## 68 N.Y.2d 397, 502 N.E.2d 197

## J.A. PRESTON CORPORATION et al., Appellants,
v.
## FABRICATION ENTERPRISES, INC., et al., Respondents.

## Court of Appeals of New York.

## Nov. 20, 1986.

Frank H. Penski, New York City, Domenick L. Gabrielli, Rochester, and Abigail T. Reardon, New York City, for appellants.

Lorance Hockert and Leonard N. Flamm, New York City, for respondents.

OPINION OF THE COURT

MEYER, Judge.

Affirmance by the Appellate Division of an order granting a preliminary injunction is not a final determination of plaintiffs' entitlement to an injunction within the meaning of CPLR 6312(b) and does not entitle plaintiffs to an order discharging the undertaking given to obtain the preliminary injunction. The order of the Appellate Division should, therefore, be affirmed, with costs.

I

In the action underlying this appeal plaintiffs sought to recover for claimed theft of trade secrets and confidential business information, for unfair competition and as to two of the defendants for breach of fiduciary duty. On the basis of their verified complaint plaintiffs obtained an order, which was served together with the complaint on May 29, 1984, requiring defendants to show cause why a preliminary injunction should not issue. The order temporarily restrained defendants from utilizing the claimed trade secrets and business information and from competing unfairly but required no bond.

After an evidentiary hearing, Special Term, concluding that there were factual issues to be tried, granted plaintiffs a preliminary injunction conditioned upon their furnishing an undertaking in the amount of $100,000 "to secure the payment of defendants' damages and costs as may be sustained by any party who is found to be wrongfully restrained by reason of this preliminary injunction" and set the matter for trial at the September 1984 Trial Term. The bond as issued, however, was conditioned to pay "such damages and costs * * * as may sustain by reason of the issuance of the temporary re

Page 521

straining order, if the court finally decides that plaintiff was not entitled thereto." [1] On defendants' appeal from the order granting the preliminary injunction the Appellate Division affirmed (106 A.D.2d 926, 484 N.Y.S.2d 1021).

Plaintiffs then moved for an order discharging the bond and, on stipulation of the parties, the matter was referred to a Judicial Hearing Officer (JHO) to decide all issues. By order dated April 15, 1985, the JHO discharged the undertaking but ordered that the preliminary injunction "shall otherwise remain in full force and effect". He held in reliance on Margolies v. Encounter, Inc., 42 N.Y.2d 475, 398 N.Y.S.2d 877, 368 N.E.2d 1243 that the issue was whether plaintiffs were entitled to a preliminary injunction, not whether they had a right to a permanent injunction, and concluded that on that question the Appellate Division's affirmance was the law of the case that the preliminary injunction had been properly issued.

On defendants' appeal from that order the Appellate Division reversed on the law and denied the motion to discharge the bond, two Justices dissenting (117 A.D.2d 997, 499 N.Y.S.2d 542), and certified to us the question whether its order was properly made. [2] The majority, distinguishing Margolies, noted that the purpose of a preliminary injunction is to preserve the status quo even though plaintiff's right to ultimate relief has not been proven and that if it is finally determined that plaintiff has no cause of action defendant is entitled to recover damages sustained as a result of being enjoined from doing what he had a right to do. The dissenters construed Margolies as foreclosing such a holding, and the prior affirmance of the grant of the injunction the law of the case and not subject to relitigation.

Before us plaintiffs argue that, the undertaking having been discharged, the Appellate Division should have dismissed the appeal as moot; that the Appellate Division's prior affirmance is the law of the case; and that Margolies is controlling. We disagree and, therefore, affirm and answer the certified question in the affirmative.

II

The mootness argument is predicated on cases holding that the undertaking is the source of liability and, therefore, absent an undertaking there is no right, short of an action for malicious prosecution, to recover for damage resulting from the issuance of court process. While such holdings are undoubtedly good law (City of Yonkers v. Federal Sugar Refining Co., 221 N.Y. 206; Honeywell, Inc. v. Technical Bldg. Servs., 103 A.D.2d 433, 480 N.Y.S.2d 627; see, 7A Weinstein-Korn-Miller, N.Y.Civ.Prac. p 6315.05), it does not follow that when an undertaking has been required and is then improperly discharged the undertaking no longer exists and the impropriety of its discharge cannot be corrected by an appellate court. Indeed, Margolies v. Encounter, Inc., 42 N.Y.2d 475, 398 N.Y.S.2d 877, 368 N.E.2d 1243, supra, on which plaintiffs rely, is authority to the contrary for, notwithstanding that Special Term had "granted plaintiffs' motion to discharge the undertaking" (42 N.Y.2d, at p. 478, 398 N.Y.S.2d 877, 368 N.E.2d 1243), we reversed and remitted "for entry of an order directing payment of damages to Encounter to the extent of the

full liability on the undertaking" (id.; University of Tex. v. Camenisch, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175).


Page 522

The contention that defendants are barred by the law of the case because they appealed unsuccessfully the order granting the injunction to the Appellate Division and did not thereafter seek to appeal to this court stands plaintiffs in no better stead. Like arguments were made and rejected Walker Mem. Baptist Church v. Saunders, 285 N.Y. 462, 474, 35 N.E.2d 42: "The plaintiff urges upon this appeal that the law of the case was conclusively determined by the order of the Appellate Division affirming the granting of the temporary injunction since that order, it is argued, constitutes an adjudication that the complaint sets forth a good cause of action. A complete answer to this contention is that the granting of a temporary injunction serves only to hold the matter is statu quo until opportunity is afforded to decide upon the merits. The granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for. In addition, since the injunction order lay in the discretion of the Special Term and the Appellate Division, the decision thereon was not appealable to this court (Brown v. Keeney Settlement Cheese Assn., 59 N.Y. 242; Strasser v. Moonelis, 108 N.Y. 611, 15 N.E. 730; Schneider v. City of Rochester, 155 N.Y. 619, 50 N.E. 291), and the proceeding is not material here" [3]

We are thus brought to the substantive issue--whether there has been a final determination of plaintiffs' right to an injunction within the meaning of CPLR 6312(b). That provision, so far as here pertinent, directs that "prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction". At common law New York courts were without power, absent malice, to award damages for injury occasioned by the issuance of an injunction even though it was determined in the action that the plaintiff was not entitled to it (City of Yonkers v. Federal Sugar Refining Co., 221 N.Y., at p. 208, supra; Lawton v. Green, 64 N.Y. 326, 330). It was not until the adoption of the 31st rule of the Court of Chancery, [4] thereafter incorporated in Code of Procedure § 222 (Field Code), that it acquired the power, limited by the amount of the undertaking, to do so (Lawton v. Green, supra). The Code provision which used the words "if the court shall finally decide that the plaintiff was not entitled thereto" was carried forward in essentially the same form into the Code of Civil Procedure (Throop Code) as section 620, into the Civil Practice Act as section 893 and ultimately into CPLR 6312(b), the words "finally decides" being changed in the present provision to "finally determined."

Of interest on the question before us is the fact that, as enacted in 1876, the Throop Code contained a section 622 which defined what "finally decided" meant. [5] Although

Page 523

the language of that section lends support to the conclusion reached by the Appellate Division majority, it is not determinative because the provision was stricken by Laws of 1877 (ch. 416, § 128), [6] thus leaving definition of the term to be worked out by the courts on a case-by-case basis. Plaintiffs argue that the Appellate Division decision affirming the preliminary injunction order is a final determination that the order was properly granted. It is, of course, true that such an order is final in the sense that no appeal from it will lie to this court except, perhaps, when the issue turns on a pure question of law, such as the sufficiency of the complaint, or upon irreparable injury (compare, Cohen and Karger, Powers of the New York Court of Appeals, at 156 with id., at 610). But the preliminary injunction here granted rested on Special Term's conclusion after an evidentiary hearing that there were issues of fact and, in any event, CPLR 6312(b) is concerned not with finality in terms of this court's jurisdiction, but with a final determination of rights between the parties.

Thus, when defendant consents to the discontinuance of the action without reserving his rights on the undertaking, there can be no recovery on the bond because there can be no such final determination (Palmer v. Foley, 71 N.Y. 106), but when, without defendant's consent, plaintiff discontinues the action his doing so is equivalent to a determination that he was not entitled to the injunction and permits defendant to recover on the bond (Pacific Mail S.S. Co. v. Toel, 85 N.Y. 646). So also when there is a dismissal for failure to state a cause of action, there is a final determination within the meaning of the provision in question (see, Williams v. Montgomery, 148 N.Y. 519, 524, 43 N.E. 57), but when dismissal occurs for a reason arising subsequent to the grant of the injunction but not going to the merits there is not (Apollinaris Co. v. Venable, 136 N.Y. 46, 32 N.E. 555). In the latter case, however, a determination of the merits may thereafter be obtained by either party in order to settle the respective rights on the undertaking (Williams v. Montgomery, supra; Schenectady Chems. v. Flacke, 113 A.D.2d 168, 171, 495 N.Y.S.2d 761; Hathorn v. Natural Carbonic Gas Co., 163 App.Div. 768, 149 N.Y.S. 176).

It thus appears that the determination of the merits upon trial of the action may, indeed, establish whether a plaintiff was entitled to an injunction within the meaning of the bond. The fallacy in the present plaintiffs' argument to the contrary lies in their emphasis upon the purpose of the preliminary injunction (to protect plaintiff's right to vindication after trial, lest a victory be Pyrrhic) rather than upon the purpose of the undertaking they are required to post in order to obtain the injunction. As is evident from the reversal, first by Chancery rule and then by statute, of the common-law rule, that purpose was "to reimburse the defendant for damages sustained if it is later finally determined that the preliminary injunction was erroneously granted" (Margolies v. Encounter, Inc., 42 N.Y.2d, at p. 477, 398 N.Y.S.2d 877, 368 N.E.2d 1243, supra; accord, Schenectady Chems. v. Flacke, 113 A.D.2d, at p. 170, 495 N.Y.S.2d 761, supra ).

That there was no error in the grant of a preliminary injunction in terms of its initial issuance, of course, does not mean that it cannot or will not ultimately be found to have been erroneously granted [7] and affords no reason for discharge of the

undertaking while the preliminary injunction remains in force. A preliminary injunction, unless sooner abrogated, continues in force until judgment in the action is rendered (Jackson v. Bunnell, 113 N.Y. 216, 220, 21 N.E. 79). So long as it continues the bond cannot be canceled (Carpenter & Hughes v. De Joseph, 29 Misc.2d 519, 520, 217 N.Y.S.2d 857), for to do so leaves the defendant without the protection which the Chancery rule and later statutes were intended to provide him. [8] It is no answer, as plaintiffs suggest, that defendants could have moved to vacate or modify the preliminary injunction (CPLR 6314) or to obtain a new undertaking against damages resulting from continuance of the injunction. As to the first, the prior decision of the Appellate Division, not appealable to this court for the reason above noted, would be the law of the case, binding upon Special Term, that the injunction granted was proper. As to the second, nothing in the CPLR or predecessor provisions suggests a legislative intent to leave a defendant unprotected while an injunction continues or to require such circuity of action in order to obtain protection against such damage as may be caused by the continuing injunction (see, Musgrave v. Sherwood, 76 N.Y. 194, 196).

It is no more of an answer to argue, as do plaintiffs, that defendants need not have appealed from the interlocutory order granting the preliminary injunction and by doing so risked the forfeiture of their right to recover on the bond in the event of an affirmance. The Appellate Division's order affirmed Special Term's interlocutory order and was itself interlocutory. Carried to its logical extreme, the argument would require the conclusion that once defendants' time to appeal from the Special Term order which granted the injunction on condition that a bond be posted to protect defendants had passed without a notice of appeal being filed, plaintiffs could move to discharge the bond, the order granting the injunction being then a final determination that it had been properly granted. It is inconceivable that the rule and statutes were designed to provide a defendant with such ephemeral protection or present him or her with such a Hobson's choice.

What plaintiffs' arguments ignore is that liability under CPLR 6312(b) turns on whether "it is finally determined that was not entitled to an injunction" (emphasis supplied). To be entitled to a preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits, (2) irreparable injury if provisional relief is not granted and (3) that the equities are in his favor (Grant Co. v. Srogi, 52 N.Y.2d 496, 517, 438 N.Y.S.2d 761, 420 N.E.2d 953). Thus a preliminary injunction, even when issued after an evidentiary hearing, depends upon probabilities, any or all of which may be disproven when the action is tried on the merits, and the affirmance of an order granting a preliminary injunction determines no more than that the discretion exercised in favor of granting the order was not based upon a demonstration of those probabilities so insufficient as to constitute an abuse of discretion. In short, the Appellate Division's prior order, though final in the sense that it could not be further appealed, determined only that plaintiffs had made a sufficient

Page 525

showing to warrant provisional relief but did not foreclose the possibility that it would

be finally determined that plaintiffs were "not entitled to an injunction" and, therefore, did not authorize discharge of the undertaking.

Margolies is not, as appellants argue, to the contrary. The precedential value of a judicial opinion is limited to the question presented by the facts of the case before the court (Towley v. King Arthur Rings, 40 N.Y.2d 129, 132-133, 386 N.Y.S.2d 80, 351 N.E.2d 728; Matter of Smathers', 309 N.Y. 487, 495, 131 N.E.2d 896; Hogan v. Board of Educ., 200 N.Y. 370, 373, 93 N.E. 951; Crane v. Bennett, 177 N.Y. 106, 112, 69 N.E. 274). Margolies, like the present case, involved an earlier appeal from the grant of a preliminary injunction, as a result of which the Appellate Division held it had been improperly issued, there being no showing of irreparable injury. In the underlying action plaintiffs sought to enjoin the use of premises leased by defendant to provide services to drug-dependent persons. For reasons extraneous to the action, defendant vacated the premises before it came to trial. Plaintiffs then moved for an order discontinuing the action and discharging their undertaking. Defendant joined in the request for discontinuance but opposed the application for discharge of the bond.

The lower courts held that though defendant had suffered damage it could not recover on the bond because there had been no final determination that plaintiffs were not entitled to an injunction. We reversed, holding the prior Appellate Division decision that irreparable injury had not been shown was indeed such a final determination, and that defendant's right to recover on the undertaking had not been defeated by its consent to discontinuance in view of the reservation of its right to recover on the bond. In so holding we noted that (42 N.Y.2d, at p. 481, 398 N.Y.S.2d 877, 368 N.E.2d 1243): "The determination of the Appellate Division in vacating the preliminary injunction in this case was based on reasoning that a preliminary injunction should never have been issued. The case would be quite different had the court concluded that while the preliminary injunction had been initially properly granted, nonetheless it should be vacated as of the later date." Thus the holding of the Margolies case is that on the particular facts before it--the prior holding that there was no predicate for issuance of the preliminary injunction and the discontinuance of the action--it had been finally determined that plaintiffs were never entitled to the preliminary injunction in the first place. [9] It is in this sense that the language in the Margolies opinion, on which plaintiffs rely [10] was used. The present case is, however, "quite different", for here (to use the language of the Margolies decision quoted above), while the prior Appellate Division decision "concluded that * * * the preliminary injunction had been initially properly

Page 526

granted," the later Trial Term decision [11] held that "nonetheless it should be vacated as of the later date."

Our conclusion that a determination upholding the issuance of a preliminary injunction does not authorize discharge of the undertaking posted to obtain the injunction is supported by decisions of the courts of other States construing identically worded statutes (Nuclear Electronic Labs. v. Cornell Co., 239 Cal.App.2d 8, 48 Cal.Rptr. 416; Beech v. United States Fid. & Guar. Co., 54 Idaho 255, 30 P.2d

1079; Palace Pharmacy v. Gardner & Guidone, 164 Ind.App. 513, 329 N.E.2d 642;
Knappett v. Locke, 92 Wash.2d 643, 600 P.2d 1257; see, Luker v. Perry, 351 So.2d
591 Dean Chevrolet v. Painters, Decorators & Paperhangers, 155 So.2d 422 Hatch v.
National Sur. Corp., 105 Mont. 245, 72 P.2d 107; Gibson Oil Co. v. Kelley, 169 Okla.
218, 36 P.2d 1111) as well as by commentators and text writers (Note, 73
Harv.L.Rev. 333, 342; Ann., 92 A.L.R. 273; 12 Carmody-Wait 2d, N.Y.Prac.,
Injunctions § 78:122, at 327; 43A CJS, Injunctions, § 320, at 706; 28 N.Y.Jur.,
Injunctions, § 192, at 545).

For the foregoing reasons, the order of the Appellate Division should be
affirmed, with costs, and the certified question answered in the affirmative.

WACHTLER, C.J., and SIMONS, KAYE, ALEXANDER and TITONE, JJ., concur.

HANCOCK, J., taking no part.

Order affirmed, etc.

---------------

1 We need not consider whether the arguably broader language of the order rather than the
language of the bond given governs, for defendants make no such argument. The reference in the
bond to a "temporary restraining order" was clearly erroneous, however, for although the order to
show cause granted a temporary restraining order, it specifically provided, as authorized by CPLR
6313(c), that no undertaking was required for that order.

2 We are informed by the briefs that after the appeal was taken, but before argument, the
underlying action was tried on the merits and resulted in dismissal of the complaint. Plaintiffs have
appealed that determination to the Appellate Division.

3 See also, James v. Board of Educ., 42 N.Y.S.2d 357, 363, 397 N.Y.S.2d 934, 366 N.E.2d 1291
Plaintiffs would distinguish the Saunders holding on the ground that it concerned the merits of the
case for purposes of the subsequent trial but not the merits of the grant of the preliminary
injunction. For the reasons stated below we do not find the distinction persuasive.

4 Manufacturers' & Traders' Bank v. Dare Co., 67 Hun. 44, 48, affd. on opn. below sub nom.
Manufacturers' & Traders' Bank v. Folk, 138 N.Y. 635, 33 N.E. 1084 quotes that rule as providing
for an undertaking conditioned to pay to the party enjoined "such damages as he may sustain by
reason of the injunction, if the court shall eventually decide that the complainant was not
equitably entitled to such injunction."

5 That section read:

"The court is deemed to have finally decided, that the plaintiff was not entitled to the injunction,
within the meaning of this article, or of an undertaking given pursuant thereto, in either of the
following cases:

"1. Where the right to an injunction depends upon the nature of the action, when a final judgment
is rendered in the action, which does not establish the plaintiff's right to a perpetual injunction.

"2. In any other case, when the injunction order is vacated; or, if an application to vacate it is not

made, or is denied, when final judgment against the plaintiff is rendered in the action; or, if two or more causes of action are joined in the complaint, when final judgment is so rendered upon the cause of action, with respect to which the injunction order was granted.

"3. Where an appeal is taken from a judgment or order, specified in either of the last two subdivisions, and a stay of proceedings is obtained thereupon, when the judgment or order is finally affirmed in, or the appeal is dismissed by, the highest court, to which an appeal therefrom is taken." The Commissioner's 1872 first draft of the section (then § 606) was followed by the notation, "New; intended to clear up some doubts that exist, as to the meaning of the words 'finally decide.' "

6 The 1877 Throop Code contained (at 264) the Commissioner's notation that, "Section 622 of the act of 1876, prepared to remove doubts, as to the meaning of the words 'finally decide,' was stricken out by the amendatory act of 1877." There is no legislative history revealing the basis for striking the section.

7 In characteristic fashion Judge Jerome Frank described a preliminary injunction in Hamilton Watch Co. v. Benrus Watch Co., 2d Cir., 206 F.2d 738, 742 as "by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness."

8 Defendants' brief concedes that they do not seek damages for the period prior to the Appellate Division's affirmance of the grant of the preliminary injunction. We consider, therefore, only the right to damages thereafter and do not reach or consider whether there is a right, notwithstanding the affirmance, to such damages as were earlier occasioned.

9 The importance of the discontinuance to that conclusion is pointed up by the holding Methodist Churches v. Barker, 18 N.Y. 463 that final judgment dismissing the complaint did not bar a reference thereafter to ascertain damages, notwithstanding the earlier dissolution of the injunction. Said the court (at p. 465): "The injunction, it is true, was dissolved before the judgment dismissing the complaint. But the order of dissolution was not in its nature a final determination that the plaintiff in the suit was not entitled to the injunction. An order, made pending a suit, dissolving a temporary injunction, by no means determines that the party in whose favor it has been granted may not be entitled to that relief at the final decision of the cause. It may be dissolved for irregularity, or because the case is badly stated in the complaint, or upon the answer of the defendant and affidavits; and yet, at the final hearing, it may be decided that the defendant ought to be enjoined. In most cases, therefore, if not in all, a reference ordered before judgment, to ascertain the damages to be recovered upon the undertaking or security, would be premature." (See also, New York Sec. & Trust Co. v. Lipman, 83 Hun. 569, 571.)

10 42 N.Y.2d, at p. 479, 398 N.Y.S.2d 877, 368 N.E.2d 1243: "the statute refers to a final determination that the plaintiffs were not entitled to the preliminary injunction, rather than a determination with respect to their right to a permanent injunction or other favorable outcome on the merits of the main action."

11 That decision being on appeal is not yet final in the statutory sense, but because it may hereafter be upheld plaintiffs are not now entitled to discharge of the undertaking.