Case 1:08-cv-10934-RJH   Document 30   Filed 07/09/2009   Page 1 of 29
Case 1:11-cv-03761-JKBF   Document 38-23   Filed 04/20/12   Page 110 of 29

EXHIBIT
11A

ROSEN, LIVINGSTON & CHOLST LLP
Peter I. Livingston, Esq.
Deborah B. Koplovitz, Esq.
275 Madison Avenue, Suite 500
New York, New York 10016
Telephone: (212) 687-7770
Telefax: (212) 687-8030

Attorneys for Purported Garnishees
Assa Corp. and Assa Company Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWENA R. HEGNA, Executrix of the Estate of
Charles Hegna, Late of Sterling, Virginia,
individually, and STEVEN A. HEGNA, CRAIG M.
HEGNA, LYNN MARIE HEGNA MOORE, and
PAUL B. HEGNA,

        Plaintiffs,

        -v-

ISLAMIC REPUBLIC OF IRAN
and
THE IRANIAN MINISTRY OF INFORMATION
AND SECURITY,

        Defendants.

Case No. 18 MS 0302
(Judgment No. 02-2472)

Judge Richard J. Holwell

**ASSA CORP.'S AND ASSA LIMITED S/H/A ASSA COMPANY
LIMITED'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' ORDER TO SHOW CAUSE AND IN SUPPORT OF
THEIR CROSS-MOTION FOR AN ORDER QUASHING THE WRITS
OF ATTACHMENT AND EXECUTION AND OTHER RELIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

PROCEDURAL HISTORY ..............................................................1

PRELIMINARY STATEMENT............................................................2

STATEMENT OF FACTS ..............................................................4

THE JURIDICAL AND LEGAL STATUS OF THE ENTITIES PLAINTIFFS ARE
TARGETING ..............................................................5

ARGUMENT ..............................................................6

I.     THIS COURT CANNOT PERMIT ATTACHMENT OR EXECUTION
PURSUANT TO TRIA..............................................................6

      A.    The Building is Not a "Blocked Asset" as Defined by TRIA.........................7

      B.    Neither Assa Nor ACL is an "Agency or Instrumentality" of Iran.....................7

          1.    Assa is a New York Corporation and ACL is Incorporated
Pursuant to the Laws of a Third Country, and, Therefore FSIA,
at 28 U.S.C. § 1603(b)(3), Precludes Them From the Definition
of "Agency or Instrumentality" ...................................................8

          2.    Neither Assa Nor ACL is an Organ of Iran, or Majority
Owned by Iran...................................................9

      C.    Plaintiffs Have Failed to Overcome the Presumption of Separateness
Between an Alleged "Alter Ego" of an Instrumentality, and Iran.....................11

II.     NEW YORK LAW BARS PLAINTIFFS' REQUEST.............................................14

      A.    New York's CPLR and Partnership Law Require That This Court Deny
the Plaintiffs' Request *vis a vis* the Partnership Assets.............................15

      B.    This Court Lacks Jurisdiction Over Plaintiffs' CPLR §5225(b)
Claim to Hold Assa and ACL Liable for Iran's Debt.............................16

      C.    Plaintiffs Have Failed to Establish Their Right to a Turn Over .......................18
Order Pursuant to CPLR § 5225(b)

III.    PLAINTIFFS ARE NOT PERMITTED TO SEEK PUNITIVE DAMAGES ...............21

IV.    ASSA AND ACL HAVE THE RIGHT TO AN ORDER QUASHING THE WRITS
       AND RELEASING THE PROPERTY FROM PLAINTIFFS' LEVY.........................21

V.     INTERNATIONAL LAW BARS THIS ACTION  ..........................................…..22

CONCLUSION .....................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130 (2nd Cir.1997) ................................. 17, 19

*Bank of New York v. Rubin,* 2006 WL 633315, 4 (S.D.N.Y 2006) (*aff'd* in part and vacated in part) ................................................................................................................................................ 13

*Beauvais v. Allegiance Securities, Inc.,* 942 F.2d 838, 840 -841 (2nd Cir. 1991)...................... 18

*Costmar Shipping Co., Ltd v. Kim Sail, Ltd,* No. 95 Civ. 3349, 1995 WL 736907 (S.D.N.Y. 1995) ................................................................................................................................................ 19

*Dole Food Co. v. Patrickson,* 538 U.S. 468, 123 S.Ct. 1655, 1660 (2003)....................... 9, 10, 11

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.,* 322 F.3d 635, 640 (9th Cir.2003).. 11

*Epperson v. Entertainment Express, Inc.,* 242 F.3d 100, 106 (2nd Cir. 2001)............................ 17

*Federal Ins. Co. v. Richard I. Rubin & Co.,* 12 F.3d 1270, 1286-87 (3rd Cir.1993) ................... 12

*Filler v. Hanvit Bank,* 378 F.3d 213, 219 (2ndCir. 2004)..................................................... 10, 11

*First Nat. City Bank v. Banco Para El Comercio Exterior De Cuba* 462 U.S. 611, 626-627(1983) ................................................................................................................................................ 11

*Flatow v. The Alavi Foundation,* 225 F. 3d 653, 200 WL 1012956, 5 (4th Cir. 2000) .............. 6, 8

*Freeman v. Complex Computing, Inc.,* 119 F.3d 1044, 1051 (2nd Cir.1997) ............................... 17

*Gabay v. Mostazafan Found. of Iran,* 968 F.Supp. 895, 898-99, 900 (S.D.N.Y.1997) *aff'd,* 152 F.3d 918 (2nd Cir.1998), *cert. denied,* 119 S.Ct. 591 (1998)........................................... 6, 8, 12

*Hegna Islamic Republic of Iran,* 402 F.3d 97 (2nd Cir. 2005)................................................. 5, 21

*Hegna v. Islamic Republic of Iran,* 299 F. Supp. 2d 229 (S.D.N.Y. 2004) ................................... 21

*Hegna v. Islamic Republic Of Iran,* 376 F.3d 226, 231 (4th Cir. 2004) ...................................... 21

*Hegna v. Islamic Republic of Iran,* 376 F.3d 485, 3 A.L.R. Fed. 2d 635 (5th Cir. 2004)............ 21

*Hegna v. Islamic Republic of Iran,* 380 F.3d 1000 (7th Cir. 2004)............................................. 21

*In re Vebeliunas,* 332 F.3d 85, 91-92 (2nd Cir. 2003).................................................................. 17

*Key Lease Corp. v. Manufacturers Hanover Trust Co.,* 117 A.D.2d 560, 561-62 (1st Dept. 1986) ................................................................................................................................................ 18

*MacDonald v. MacDonald,* 226 A.D.2d 594, 595 (2nd Dept. 1996) ............................................ 15

*Meistrich v. Executive Monetary Mgt.*, 1984 U.S. Dist. LEXIS 24251, 3 (S.D.N.Y. 1984) ........ 15

*Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 129 S.Ct. 1732, 1738 (2009) ................................................................................................ 7

*Morris v. New York State Dep't of Taxation & Fin.*, 603 N.Y.S.2d 807, 810-11 (1993) ............. 19

*Murphy v. Korea Asset Management Corp.*, 421 F.Supp.2d 627, 641 (S.D.N.Y.2005).......... 10, 11

*Northeastern Real Estate Securities Corp. v. Goldstein*, 267 A.D. 832 (2nd Dept. 1944)........... 15

*Plunket v. Estate of Doyle*, 2009 WL 73146, 4, (S.D.N.Y. 2009) ................................................ 17

*Rader v. Goldoff*, 223 A.D. 455 (1st Dept 1928) ....................................................................... 15

*Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009)........................................ 3

*State v. Easton*, 169 Misc.2d 282, 647 N.Y.S.2d 904, 908-09 (Sup.Ct.1995).............................. 19

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2nd Cir.1991)
................................................................................................................................................ 19

## Statutes

CPLR § 5203........................................................................................................................ 2, 14

CPLR § 5225............................................................................................................. 2, 3, 14, 16, 20

CPLR § 5225(a) ........................................................................................................................ 16

CPLR § 5225(b)..................................................................................................................... 18, 20

CPLR § 5230......................................................................................................................... 2, 14

CPLR § 5236...................................................................................................................... 2, 14, 15

CPLR § 5240..................................................................................................................... 21, 22

New York Partnership Law § 51 .................................................................................................. 15

New York Partnership Law § 52 .................................................................................................. 15

New York Partnership Law § 54 .................................................................................................. 15

New York Partnership Law § 51(2)(c) ........................................................................................ 15

FRCP 69................................................................................................................... 2, 3, 15, 17

FRCP 69(a) .......................................................................................................................... 21, 22

28 U.S.C. § 1603(a) ................................................................................................................... 8

28 U.S.C. § 1603(b) ................................................................................................ 8

28 U.S.C. § 1603(b)(2) ................................................................................ 8, 9, 10, 11

28 U.S.C. § 1603 (b)(3) ......................................................................................... 6, 8

28 U.S.C. § 1605(a)(7) ............................................................................................. 6

28 U.S.C. § 1609 ..................................................................................................... 8

28 U.S.C. § 1610 ..................................................................................................... 6

28 U.S.C. § 1963 ..................................................................................................... 2

28 U.S.C. § 2001 ..................................................................................................... 2

28 U.S.C. § 2002 ..................................................................................................... 2

50 U.S.C. § 1701 ..................................................................................................... 7

50 U.S.C. § 1702 ..................................................................................................... 7

50 U.S.C.App. § 5(b) ............................................................................................... 7

Terrorism Risk Insurance Act of 2002................................ 2, 3, 4, 5, 6, 7, 9, 13, 14, 17, 21

Terrorism Risk Insurance Act of 2002 § 201(a) ................................................... 2, 6, 7

Victims of Trafficking and Violence Protection Act of 2000 ........................... 4, 5, 21, 22

Victims of Trafficking and Violence Protection Act of 2000 § 2002............................. 5

## Administrative Code

31 CFR §560 ........................................................................................................... 13

31 CFR § 560.101(a)................................................................................................ 13

31 CFR § 560.304 ............................................................................................... 13, 14

31 CFR § 560.313 ................................................................................................... 14

## Treaties

The Treaty of Amity, Economic Relations and Consular Rights, 8 U.S.T. 899,  284 UNTS 93 (1955) ..........................................................................................................4, 22

# PROCEDURAL HISTORY

This action has been referred to this Court as a related action to the following other matters: *United States v. All Right, Title, and Interest of Assa Corp.*, et al., 08-cv-10934 (the "U.S. Complaint"); *Greenbaum v. Assa Corp., et al*, 09-cv-553, 09-cv-564 ("Greenbaum"); *Miller v. Alavi Foundation, et al.*, 09-cv-166 ("Miller"), *Rubin v. Alavi Foundation*, 09-cv-165 ("Rubin I"); and *Rubin v. Alavi Foundation*, 09-cv-4784, and 09-cv-4614 ("Rubin II"). (Greenbaum, Miller, Rubin I, Rubin II, and the instant matter are all collectively referred to as the "Private Plaintiffs").[1]

On April 3, 2009, a status conference was held with the Court. During the status conference, Assa Corp. ("Assa") and Assa Limited s/h/a Assa Company Limited. ("ACL") requested that this Court stay the Private Plaintiffs' actions, because any disposition of the U.S. Complaint would likely have a dispositive impact on the Private Plaintiffs, since they all base their requests on a determination made by OFAC and allegations in the U.S. Complaint, which have not, as yet, been tested.

However, after the status conference, this Court issued several scheduling orders; one order required briefing with respect to the instant Order to Show Cause, and another order addressed Assa and ACL's motion to dismiss the U.S. Complaint, the Alavi Foundation's motion to dismiss the Greenbaum action, and a stay of the Greenbaum, Miller and Rubin I actions as to Assa and ACL until such time as the Court fully reviews the briefing in the motion to dismiss the U.S. Complaint. Because the Court required briefing in the instant matter, and stayed the Greenbaum, Miller and Rubin I actions, the effect is that the Hegna Plaintiffs are permitted a preliminary opportunity to brief many of the same issues in the Greenbaum, Miller and Rubin I

---

[1] Rubin II was removed from New York State Supreme Court after the scheduling orders had been issued by this Court.

actions without any input from those Plaintiffs and without any disposition in the U.S. Complaint. Therefore, Assa and ACL renew their request that the Court stay the instant matter as well as the other Private Plaintiffs' actions.

Because the Court has not, as yet, granted any request to stay the Hegna matter, this brief is primarily addressed to the inability of the Hegna plaintiffs to obtain the relief sought at this time, namely, a sale of the real property owned by the 650 Fifth Avenue Company, a New York State Partnership, and bank accounts held in the name of Assa Corp. Not only is their request premature, but there is no substantive basis for the Court to grant the requested relief.

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Assa and ACL in opposition to the Plaintiffs' request for a turn over order, order of attachment and/or execution as against the real property located at 650 Fifth Avenue, New York, New York (the "Building"), which is owned by the 650 Fifth Avenue Company ("650"), a New York State Partnership, which is separate and distinct from Assa and ACL. Plaintiffs also seek the funds from Assa's bank accounts which were seized by the United States Government in conjunction with a civil forfeiture action. Plaintiffs have brought his action pursuant to FRCP 69, New York CPLR §§ 5203, 5225, 5230, 5236, 28 U.S.C. §§ 1963, 2001-2002, and the Terrorism Risk Insurance Act of 2002 § 201(a) ("TRIA"), in which they seek to execute on their judgment for $375,000,000.00.

This Memorandum is also submitted in support of Assa's and ACL's cross-motion for an order quashing the Plaintiffs' writs of execution and attachment, for an order releasing Assa's and ACL's property from the Plaintiffs' levy, and for an order enjoining the Plaintiffs' from issuing future writs against Assa's and ACL's property, or at a minimum, enjoining the Plaintiffs from

issuing future writs against Assa's and ACL's property where Plaintiffs seek to execute on their punitive damages award.

Even accepting Plaintiffs' allegations as true, as the Court must do on this motion, Plaintiffs are not entitled to the requested relief. *See, Rescuecom Corp. v. Google, Inc.,* 562 F.3d 123, 127 (2nd Cir. 2009). Throughout their moving papers, Plaintiffs repeatedly refer to their desire to attach the assets of Bank Melli, which they allege is a known agency or instrumentality of the Republic of Iran ("Iran"). Legally and factually, Plaintiffs are actually attempting to levy upon the sole asset of 650 and the personal property of one of 650's two partners', namely, bank accounts held by Assa, a New York State Corporation.

As will be demonstrated herein, Plaintiffs have no right to any of the requested relief. At the outset, this Court lacks jurisdiction pursuant to TRIA, and FRCP 69 and CPLR § 5225 with respect to garnishing the property of third parties. Moreover, Plaintiffs mistakenly argue that the Building, which is solely owned by 650, is subject to attachment and execution to satisfy their Judgment pursuant to TRIA. Plaintiffs have failed to establish or even allege the two required prongs for attachment and execution to satisfy their Judgment pursuant to TRIA. The Building is not a "blocked asset" as required by TRIA, and is therefore not subject to attachment in aid of execution pursuant to TRIA. In addition, neither 650, Alavi, Assa nor ACL is an agency or instrumentality of Iran, as that term is defined by the Foreign Sovereign Immunities Act ("FSIA") and TRIA. With respect to Assa's bank accounts, they are not attachable because neither Assa nor ACL is an "agency or instrumentality" as defined by FSIA or TRIA. Accordingly, there is no legal basis upon which to levy upon the Building itself, Assa's interest in 650, or Assa's bank accounts.

3

Under New York State Law, Plaintiffs' request must fail. New York State Partnership Law does not permit Plaintiffs to execute on the Building, which is the partnership's sole asset. Procedurally, Plaintiffs' requests also fail as to Assa's bank accounts and the Building. Therefore, for all these reasons, the assets sought by Plaintiffs are not subject to attachment and the writs should be quashed.

The writs should also be quashed since Plaintiffs are improperly seeking to execute on their punitive damage award against MOIS. Plaintiffs have already collected $8,000,000.00 from a fund maintained by the United States Government pursuant to the Victims of Trafficking and Violence Protection Act of 2000 ("VPA"), and have executed waivers which preclude them from seeking to execute on the award of punitive damages under these circumstances. Moreover, TRIA does not authorize the execution of Assa's assets, because there is no allegation that Assa or ACL are in any way connected to MOIS.

Though Plaintiffs are not entitled to the requested relief, should this Court determine that Assa or ACL are agencies or instrumentalities of Bank Melli such that Assa or ACL's assets are attachable pursuant to TRIA, then this Court is precluded from issuing a turn over Order, because a court order permitting attachment and sale of the Building and the bank accounts will put the United States, already in breach, in further breach of a bilateral treaty between Iran and the United States, the Treaty of Amity, Economic Relations, and Consular Rights, 8 U.S.T. 899, 284 UNTS 93 (1955) ("Treaty of Amity"). Assa and ACL respectfully refer the Court to their accompanying motion to dismiss the U.S. Complaint for this point of law.

## STATEMENT OF FACTS

Plaintiffs, who are some of the surviving family members of Charles Hegna, brought an action in the United States District Court for the District of Columbia, and obtained a default

4

judgment against Iran and MOIS in the amount of $375,000,000.00, representing $42,000,000.00 in compensatory damages and $333,000,000.00 in punitive damages against MOIS. As part of their efforts to collect on their default judgment, Plaintiffs applied for reimbursement pursuant to § 2002 of the Victims of Trafficking and Violence Protection Act of 2000 ("VPA"), as amended by TRIA. *Hegna v. Islamic Republic of Iran*, 402 F.3d 97 (2nd Cir. 2005) . As a result of their application, Plaintiffs received more than $8,000,000.00 from the United States of America. *Id.* Plaintiffs, once having received these payments, relinquished certain rights to execute on their judgment, including punitive damages. VPA § 2002. Notwithstanding the fact that Plaintiffs have no legal right to execute on the punitive damages portion of their default judgment, Plaintiffs' writs and Order to Show Cause all improperly include requests to collect amounts awarded for punitive damages. This Court cannot condone such attempts by granting the requested relief. Plaintiffs base the entirety of their claim for execution on the unsupported claim that Assa and ACL are "alter egos" of Bank Melli. Not only are Plaintiffs' moving papers entirely devoid of any factual demonstration to support their baseless claims, but there has never been any judicial determination to that effect. Moreover, as will be demonstrated *infra*, even assuming that Assa or ACL are subsidiaries or "alter egos" of Bank Melli, neither FSIA, TRIA, nor New York's CPLR permit Plaintiffs to attach the assets of a subsidiary or "alter ego" of an "agency or instrumentality" in aid of execution of a default judgment.

### THE JURIDICAL AND LEGAL STATUS OF THE ENTITIES PLAINTIFFS ARE TARGETING

650 is a New York State General Partnership which is owned by the Alavi Foundation and Assa. The Alavi Foundation is a New York State Non-Profit Organization and is a 60% partner of 650. Assa Corp. is a New York State Corporation and is a 40% partner of 650. The Alavi Foundation, formerly the Mostazafan Foundation, has previously had the opportunity to argue

similar issues before this Court, the Second Circuit, and, *inter alia*, before the District Court of the District of Columbia. Each Court has specifically concluded that neither Alavi nor its predecessor, the Mostazafan Foundation, is an agency or instrumentality of Iran under FSIA. Therefore, neither Alavi's nor the Mostazafan Foundation's property is attachable for execution on judgments against Iran either pursuant to FSIA or under equitable principles established by the United States Supreme Court. *See, e.g., Flatow v. The Alavi Found.*, 225 F.3d 653, 2000 WL 1012956, 5 (4th Cir. 2000); *Gabay v. Mostazafan Found. of Iran*, 968 F.Supp. 895, 898-99, 900 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 918 (2nd Cir. 1998), *cert. denied*, 119 S.Ct. 591 (1998). Because, like the Mostazafan Foundation and Alavi, Assa and ACL were organized pursuant to New York State Law (and the law of the Bailiwick of Jersey), § 1603(b)(3) of the FSIA mandates that neither Assa nor ACL are agencies or instrumentalities of Iran. 28 U.S.C. § 1603(b)(3)

## ARGUMENT

**I.    THIS COURT CANNOT PERMIT ATTACHMENT OR EXECUTION PURSUANT TO TRIA**

In their efforts to execute on its default judgment against Iran and MOIS, and require a judicial sale of the Building, Plaintiffs mistakenly rely on § 201(a) of TRIA which provides:

> in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism or for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7), the *blocked assets* of a terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution. . . .(emphasis added) 28 U.S.C. § 1610.

Assa and ACL submit that neither Assa's, ACL's, nor 650's assets are subject to execution because the Building *per se* is not a "blocked asset", and because as established *infra*, neither Assa nor ACL is an "agency or instrumentality" of Iran, one of the judgment debtors, as defined by the FSIA.

6

## A.    The Building is Not a "Blocked Asset" as Defined by TRIA

TRIA permits "a person with a terrorism-related judgment to attach an asset of the responsible 'terrorist' state to satisfy the judgment, '[n]otwithstanding any other provision of law,' provided that the asset was a 'blocked asset.'" *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 129 S.Ct. 1732, 1738 (2009). The plain definitional section of TRIA § 201(a) defines a "blocked asset" as an asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C.App. 5(b)) or under §§ 202 and 203 of the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. 1701; 1702).

Plaintiffs cite to no order or notice issued by the United States which has "seized or frozen" the assets of 650, or the Building. Therefore, this Court is without authority to issue a turn over order, because the Order to Show Cause and the supporting documents are entirely devoid of any allegation that the Building which Plaintiffs seek to sell by judicial order is a "blocked asset" as defined by TRIA.

## B.    Neither Assa Nor ACL is an "Agency or Instrumentality" of Iran

In addition to failing to establish that 650's property is a "blocked asset" as stated *supra*, Plaintiffs have also failed to establish that they seek to attach the "assets of any agency or instrumentality of that terrorist party" which is required by TRIA. There has never been any judicial finding that Assa or ACL is an "agency or instrumentality" of Iran, and the Order to Show Cause is completely devoid of any evidentiary showing to that effect. Accordingly, Plaintiffs have failed to meet the requirements for execution pursuant to TRIA § 201(a) and this Court is without authority to issue a turn over order.

7

Congress has specified in the Foreign Sovereign Immunities Act ("FSIA") at 28 U.S.C. § 1609, that the "property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter." A "foreign state" is defined by FSIA, at 28 U.S.C. § 1603(a) to "[include] a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(b) provides the legal definition of "agency or instrumentality of a foreign state". Pursuant 28 U.S.C. § 1603(b), an "agency or instrumentality" only includes an entity:

> (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country. 28 U.S.C. § 1603(b). (emphasis added)

As will be set forth in more detail *infra*, pursuant to the statutory requirements, neither Assa nor ACL is an "agency or instrumentality" of Iran as defined by FSIA, at §§ 1603(b)(2) or (b)(3), and neither the bank accounts nor the Building can be attached.

1. **Assa is a New York Corporation and ACL is Incorporated Pursuant to the Laws of a Third Country, and, Therefore FSIA, at 28 § 1603(b)(3), Precludes Them From the Definition of "Agency or Instrumentality"**

As discussed *supra*, Assa cannot be judicially determined to be an "agency or instrumentality" because it is a valid, New York State Corporation, and is, thus, a "citizen of a State of the United States". *Flatow v. The Alavi Foundation*, 225 F. 3d at 5. ACL is organized pursuant to the laws of the Bailiwick of Jersey, located in the Channel Islands. Accordingly, both Assa and ACL are specifically excluded from the definition of "agency or instrumentality of a foreign state" pursuant to 28 U.S.C. §1603(b)(3) and the assets of both are immune from attachment. *See, e.g. Gabay,* 968 F.Supp. at 898-99; *Flatow,* 225 F. 3d at 653. It is telling that in

their moving papers, Plaintiffs have specifically omitted this third, and required prong for
determining whether an entity is an "agency or instrumentality of a foreign state."

### 2. Neither Assa nor ACL is an Organ of Iran, or Majority Owned by Iran

This Court is without authority to order a turn over or otherwise permit attachment of Assa
or ACL's assets pursuant to FSIA and TRIA because Plaintiffs have failed to establish that Assa
or ACL is an *organ* of Iran or political subdivision thereof, or that they are *majority owned* by
Iran or a political subdivision thereof, as is required by FSIA. 28 U.S.C. § 1603(b)(2). According
to the unsupported allegations in the Order to Show Cause, and without conceding to any of these
self-serving allegations therein, Assa or ACL are "straw companies" or "alter egos" of Bank
Melli. Even if these facts were true, this Court is precluded from finding that either Assa or ACL
is an "agency or instrumentality" of *Iran* in line with clear statutory requirements, as well as
binding precedent from the United States Supreme Court and the Second Circuit. As the United
States Supreme Court has held that "only direct ownership of a majority of shares by the foreign
state satisfies the statutory requirement" of the definition of an "agency or instrumentality" of a
foreign state. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 123 S.Ct. 1655, 1660 (2003). There is
no allegation that Assa or ACL are directly owned by Iran, and, therefore, there is no legal basis
for finding that Assa and ACL are agencies or instrumentalities of Iran pursuant to FSIA.
Additionally, the Second Circuit, in *Filler v. Hanvit Bank*, 378 F.3d 213, 219 (2nd Cir. 2004),
expanded on the holding of the United States Supreme Court in *Dole Food Co.* by concluding
that:

> Once an entity is determined to be an agency or instrumentality, it is deemed
> *part of* the foreign state but it does not *become* the foreign state and,
> therefore, *cannot confer agency or instrumentality status on corporate*

9

*entities further down the chain of ownership. Filler*, 378 F.3d at 219. (emphasis added).

In *Filler*, the Second Circuit declined to extend the "agency or instrumentality" definition to two banks which were owned by an organ of Korea, rather than Korea itself. In line with the holdings in *Dole Food Co.* and *Filler*, taking the allegations in the Order to Show Cause as true, and without conceding to any of those allegations, Bank Melli's alleged "control" of Assa or ACL cannot legally confer "agency or instrumentality" status on Assa or ACL pursuant to FSIA.

In *Filler*, the Second Circuit considered various factors to determine whether an entity could be considered an organ of a foreign sovereign pursuant to FSIA, at 28 U.S.C. § 1603(b)(2). Those factors were: (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law. *Id.* at 217.

As this very Court has determined, *"Filler* invites district courts to engage in a balancing process, without particular emphasis on any given factor and without requiring that every factor weigh in favor of, or against, the entity claiming FSIA immunity." *Murphy v. Korea Asset Management Corp.*, 421 F.Supp.2d 627, 641 (S.D.N.Y.2005). It is respectfully submitted that Plaintiffs have failed to allege or suggest that the *Filler* factors are present in the instant matter.

There is no allegation that Iran created Assa or ACL. Indeed, the facts indicate that Assa is a New York State Corporation which was organized in 1989. ACL was also created in or about the same time and is organized pursuant to the law of the Bailiwick of Jersey. There is no allegation or any evidence submitted which could allow this Court to conclude that Iran actively supervises Assa or ACL. There is no allegation, let alone proof, that Iran requires the hiring of

any employees or pays their salaries. There is no allegation that Assa or ACL hold any exclusive right in Iran, and there is no allegation how Assa or ACL are treated under Iranian law. In fact, Assa and ACL, being a New York State Corporation and a Jersey Corporation, are not treated under Iranian law in any way. As none of the five factors from *Filler* have even been alleged by Plaintiffs, there are no grounds for a finding of "agency or instrumentality" pursuant to FSIA, 28 U.S.C. § 1603(b)(2).

This Court has concluded that the term "organ" should be interpreted to reflect "Congress' intent that it be 'difficult for private litigants to bring foreign governments into Court, thereby affronting them.'" *Murphy*, 421 F.Supp.2d at 640, *citing to, EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir.2003). The conclusions in *Dole Food Co.*, *Filler* and *Murphy* provide certainty to corporations and should be followed by this Court.

At most, the Plaintiffs have alleged that Assa and/or ACL are subsidiaries of Bank Melli. Because the Second Circuit has held that it is a legal impossibility for an agency or instrumentality to confer "agency or instrumentality" status on a corporate entity further down the corporate chain, and because the law requires certainty, this Court should not conclude that Assa and/or ACL are agencies or instrumentalities of Iran.

C.    **Plaintiffs Have Failed to Overcome the Presumption of Separateness Between an Alleged "Alter Ego" of an Instrumentality, and Iran**

The United States Supreme Court held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat. City Bank v. Banco Para El Comercio Exterior De Cuba* 462 U.S. 611, 626-627(1983) ("*Bancec*"). In *Bancec*, the Supreme Court concluded that an agency or instrumentality of a foreign state is not automatically liable for the debts of its associated foreign state. *Id.* The *Bancec* presumption of separateness applies in circumstances such as this. This

11

Court has determined that the presumption of separateness cannot be overcome with bare assertions, such as those made by these Plaintiffs, that a New York Corporation is an "alter ego" of an "agency or instrumentality" of Iran. *See, e.g., Gabay,* 968 F.Supp. at 898-99, 900, *aff'd,* 152 F.3d 918 (2nd Cir. 1998), *cert. denied,* 119 S.Ct. 591 (1998), (in applying the *Bancec* analysis, the Court held that the plaintiff failed to adduce sufficient evidence to show that an instrumentality of Iran exercised day-to-day control over its alleged alter ego), *See also, Federal Ins. Co. v. Richard I. Rubin & Co.,* 12 F.3d 1270, 1286-87 (3rd Cir.1993).

Indeed, the presumption of separateness cannot be overcome under these facts. In order to overcome the presumption of separateness, and according to *Bancec,* two factors must be present: (1) when "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," and (2) when treating the entities separately "would work fraud or injustice." *Bancec,* 462 U.S. at 626-627. Rather than producing any evidence in support of their Order to Show Cause, Plaintiffs merely employ the phrase "alter ego" in an attempt to skirt the unavoidable legal conclusion that neither Assa nor ACL can be found to be liable for any judgment against Iran or MOIS. Moreover, there is no allegation that Iran controls or owns Assa or ACL or that Assa and ACL are agents of Iran. Plaintiffs allege that Bank Melli established Assa or ACL as "front companies" in 1989, some 13 years before Plaintiffs obtained their default judgment, and some six years before the Iranian Transaction Regulations ("ITR") were even contemplated and it became sanctionable conduct to transact with Iran. Therefore, in addition to there being no allegation of any relationship between Iran and Assa or ACL, because there is no allegation of fraud, the *Bancec* presumption cannot be overcome.

Plaintiffs seem confused as to the basis for their request. They alternatively rely on arguments from the U.S. Government's civil forfeiture complaint, which alleges that Assa's assets

are subject to forfeiture because Assa allegedly provided services to Bank Melli, in contravention of the ITRs and IEEPA. Plaintiffs also alternatively rely on definitions from the ITR to persuade this Court to find that Assa is an "agency or instrumentality" of Iran. Plaintiffs do so to no avail. Neither provides Plaintiffs with the right to obtain Assa's assets pursuant to TRIA.

Plaintiffs mistakenly suggest that this Court rely on an OFAC designation rather than a congressionally mandated statutory definition for purposes of determining "agency or instrumentality" status. Though Assa concedes that its property was blocked by OFAC, Assa vigorously disputes that, as of yet, unchallenged designation. In any event, this Court cannot rely on any designation by OFAC for purposes of making the "agency or instrumentality" determination.

Rather, the "agency or instrumentality" determination can solely be decided by relying on the definitions from FSIA. Neither the Treasury Department nor its particular agency, OFAC, has any legislative authority to endow *private parties* with the ability to collect on judgments in U.S. District Courts. Indeed, the ITRs do not and cannot create a private right of action as that authority solely belongs to Congress. OFAC's purpose, according to the United States Department of Treasury's website, is to simply "[administer] and [enforce] economic and trade sanctions based on US foreign policy and national security goals". The ITR, 31 C.F.R. §560, "broadly regulate trade in Iranian goods, services and technology; new investment in Iran; and financial transactions..." *Id.* §560.101(a). They do not contain a general blocking provision." *Bank of New York v. Rubin*, 2006 WL 633315, 4 (S.D.N.Y 2006), *aff'd* in part and vacated in part, 484 F.3d 149 (2nd Cir. 2007).

Had Congress desired to permit private plaintiffs to apply a definition from the ITR as to either "Government of Iran", 31 CFR § 560.304 or "Entity owned or controlled by the

13

Government of Iran", 31 CFR § 560.313, rather than definitions from FSIA, then Congress could have included this ability in the unambiguous provisions of TRIA at the time TRIA was enacted, since TRIA was passed by Congress in 2002 and the ITR were adopted in 1995. However, Congress did not provide for jurisdiction in a federal district court over entities which OFAC determined to be the "Government of Iran", 31 CFR § 560.304, or "owned or controlled by Iran", 31 CFR § 560.313. For that determination, Courts are required to look solely to FSIA and as stated *supra*, the FSIA definition does not include an alleged "alter ego" of an "agency or instrumentality", nor does it permit inclusion of United States entities and entities organized pursuant to the law of a third country.   Because Congress did not create a separate TRIA definitional section for "agency or instrumentality", and for the reasons stated *supra*, this Court is obligated to follow Second Circuit precedent, and must conclude that neither FSIA nor TRIA permit Plaintiffs to attach Assa or ACL's assets.

## II.   NEW YORK LAW BARS PLAINTIFFS' REQUEST

Because Plaintiffs have failed to properly bring this proceeding per New York State Law on Enforcement of Money Judgments, their request should be denied on these grounds alone. Plaintiffs have relied on the following sections: CPLR § 5203 ("Priorities and liens upon real property"), § 5225 ("Payment or delivery of property of judgment debtor"), § 5230 ("Executions") and § 5236 ("Sale of real property"). None of these permit a Court to grant the relief requested, as none of these sections provide Plaintiff with the right to execute on either partnership assets or Assa's bank accounts, which are personal property. Plaintiffs' request must be denied for their failure to adhere with and meet New York's procedural requirements on enforcement of money judgments as demonstrated *infra*.

14

A.    **New York's CPLR and Partnership Law Require That This Court Deny the Plaintiffs' Request *vis à vis* the Partnership Assets**

This Court is obligated to follow the legal requirements of New York State Law with respect to the attachment and execution of property, pursuant to Federal Rules of Civil Procedure ("FRCP") 69, which provides that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution- must accord with the procedure of the state where the court is located." FRCP 69.  Due to their failures to strictly follow the procedural mandates in New York Partnership Law and the CPLR, Plaintiffs are barred from attaching or executing on any of the Partnership's assets and Assa's bank accounts. [2]

In addition, the plain terms of New York Partnership Law § 51(2)(c) flatly prohibit the attachment or execution of *partnership property* to satisfy a claim against a partner. That section provides that "[a] partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership." *See, also, Rader v. Goldoff,* 223 A.D. 455 (1st Dept 1928); *Meistrich v. Executive Monetary Mgt.,* 1984 U.S. Dist. LEXIS 24251, 3 (S.D.N.Y. 1984); *MacDonald v. MacDonald,* 226 A.D.2d 594, 595 (2nd Dept. 1996). Plaintiffs have no claim against 650, and are therefore not legally entitled to a Court Order requiring the sale of the Building. Moreover, neither Assa nor ACL own the real property located at 650 Fifth Avenue, so the provisions of CPLR  § 5236 do not even apply.  For all these reasons, Plaintiffs

---

[2] *See, e.g., Northeastern Real Estate Securities Corp. v. Goldstein,* 267 A.D. 832, 833 (2nd Dept. 1944), *citing,* New York Partnership Law §§ 51, 52, and 54, and the predecessor of the CPLR (failure to follow the procedural mandates of New York's Partnership Law and the CPLR resulted in a Court order vacating a restraining notice and information subpoena in which a creditor of a partner sought to obtain the assets of a partnership, concluding that "[t]he interest of the judgment debtor in the profits of the partnership cannot be reached in this manner.").

are statutorily barred from seeking to execute on any partnership asset, and that portion of the

Order to Show Cause seeking to sell the Building must be denied.

**B.** **This Court Lacks Jurisdiction Over Plaintiffs' CPLR § 5225(b) Claim to Hold Assa and ACL Liable for Iran's Debt**

This is a proceeding "supplementary to and in aid of judgment or execution" and

according to FRCP 69, it "must accord with the procedure of the state where the court is located."

Because Plaintiffs have failed to bring this proceeding in accordance with the requirements of

New York State law, their request must, therefore, be denied. New York CPLR §5225 relates to

payment or delivery of property of the judgment debtor. Though Plaintiffs do not specify which

of the two sections they are moving under, it is respectfully submitted that CPLR§ 5225(a) does

not apply, because Plaintiffs do not allege that they are seeking to execute upon Iran's or MOIS'

property which is in Assa's possession. Rather, Plaintiffs allege that they are seeking to execute

upon the Building, which they allege is Bank Melli's property in the possession of 650 and Assa.

In essence, as alleged, Plaintiffs contend that they are entitled to reach Assa's, ACL's,

and/or 650's assets because Bank Melli is the beneficial owner of Assa and/or ACL and holds the

reins behind 650 and Assa. Essentially, therefore, Plaintiffs allege a type of equitable ownership.

*See*, page 8, paragraph E (2) (c) of the Plaintiffs' memorandum of law, wherein they state "[i]n

fact, however, Bank Melli, not Assa, has always been the owner of a forty (40%) percent interest

in the 650 Fifth Avenue property. Bank Melli formed and availed itself of the Fifth Avenue

Company in order to disguise its interest in the real estate and to regularly receive the shared

profits from the rental of the 650 Fifth Avenue premises, through two straw companies Assa and

Assa Co., Ltd.".

New York State permits a party to "use an opposing party's equitable ownership of a non-

party corporation to reach that corporation's assets under a theory of reverse veil piercing."

16

*Plunket v. Estate of Doyle*, 2009 WL 73146, 4, (S.D.N.Y. 2009), *citing to In re Vebeliunas*, 332

F.3d 85, 91-92 (2nd Cir. 2003); *Freeman v. Complex Computing, Inc.*, 119 F.3d 1044, 1051 (2nd

Cir.1997); *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2nd Cir.1997).

However, this court lacks jurisdiction over an ancillary action, such as this, in which a movant

seeks to impose liability on third-parties to the original action. *Epperson v. Entertainment*

*Express, Inc.*, 242 F.3d 100, 106 (2nd Cir. 2001). In *Epperson*, the Second Circuit Court of

Appeals distinguished between "post-judgment proceedings to collect an existing judgment" and

proceedings, such as this, where the judgment creditors claim "alter-ego" liability and corporate

veil-piercing. *Id.* In the latter type of cases, the *Epperson* court explained, a plaintiff raises "an

independent controversy with a new party in an effort to shift liability." *Id.* Because Plaintiffs

seek to hold Assa and ACL liable for their judgment against Iran and MOIS under an "alter ego"

or corporate veil piercing theory, *Epperson* mandates that this Court lacks jurisdiction to hear

Plaintiffs' claims.

      TRIA does not provide Plaintiffs' with the necessary jurisdiction, because TRIA merely

extends to an "agency or instrumentality" of Iran, and does not provide jurisdiction to an alleged

"alter ego" or subsidiary of an alleged "agency or instrumentality" of Iran. In addition, TRIA

cannot provide Plaintiffs with the jurisdictional basis to be heard in this Court because TRIA has

not provided for its own mechanism for enforcement of judgments, and still requires Plaintiffs to

look to state law to do so. Therefore, TRIA does not preempt New York State law with respect to

enforcement of judgments and New York State law controls. Had the drafters of TRIA desired to

override the procedural mechanism for enforcement of judgments pursuant to FRCP 69, they

could have included their own procedural mechanism for enforcement of federal judgments.

Because they did not do so, this Court lacks jurisdiction to proceed pursuant to FRCP 69 and New York's CPLR.

### C.   Plaintiffs Have Failed to Establish Their Right to a Turn Over Order Pursuant to CPLR § 5225(b)

If this Court concludes that there is a jurisdictional basis to review Plaintiffs' claim pursuant to New York State Law, Plaintiffs' request still fails. In order to obtain a turn over order pursuant to New York State Law, where property is not in the possession of the judgment debtor, Plaintiffs are required to establish that Iran and/or MOIS have an interest in the property, and that *Iran* is entitled to the property, or that Plaintiffs' rights to the property are superior to Assa's or ACL's. CPLR § 5225(b). The Second Circuit has evaluated the necessary legal framework:

> By its express language, the [CPLR § 5225(b)] provides for a two-step analysis in determining whether property belonging to a judgment debtor— but in the possession of a third party — should be turned over to a judgment creditor. First, it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach. Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is "entitled to the possession of such property," *or* it must find that "the judgment creditor's rights to the property are superior" to those of the party in whose possession it is. *Beauvais v. Allegiance Securities, Inc.*, 942 F.2d 838, 840 -841 (2nd Cir. 1991), *citing to Key Lease Corp. v. Manufacturers Hanover Trust Co.*, 117 A.D.2d 560, 561-62 (1st Dept. 1986).

Plaintiffs have failed to establish either prong. Plaintiffs do not allege, let alone prove, that Iran has any interest in the Building, 650, Assa's interest in 650, or Assa's bank accounts. Nor could they. In order to prove that Iran (or MOIS) have an "interest" pursuant to New York State law, Plaintiffs would have to pierce the corporate veil and show that Assa and/or ACL are directly controlled by Iran and that Iran established Assa and ACL wrongfully as to the judgment debtors. However, even though New York law recognizes "reverse" piercing, which is a legal vehicle

18

whereby a plaintiff seeks to hold a corporation accountable for actions of its shareholders, this Court cannot grant the requested relief because Plaintiffs have not alleged any fact which could permit this Court to find Assa liable for any actions by Iran. *See Am. Fuel Corp.*, 122 F.3d at 134, *citing to, State v. Easton*, 169 Misc.2d 282, 647 N.Y.S.2d 904, 908-09 (Sup.Ct. 1995).

The New York Court of Appeals has held that in order to pierce the corporate veil, there must be a finding of complete domination of the corporation <u>as well as</u> a showing of a wrongful or unjust act toward the party seeking the veil to be pierced. *Morris v. New York State Dep't of Taxation & Fin.*, 603 N.Y.S.2d 807, 810-11 (1993) (emphasis added). *See also, Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 135 (2nd Cir. 1997); *Costmar Shipping Co., Ltd v. Kim Sail, Ltd*, No. 95 Civ. 3349, 1995 WL 736907 (S.D.N.Y. 1995). Plaintiffs have not alleged any of the factors required for complete domination which the Second Circuit has articulated. Those factors are:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2nd Cir. 1991).

Rather than alleging *any* of these factors, Plaintiffs merely rely on bare and unsubstantiated allegations from another Complaint in a related action, which itself fails to establish any of the 10 necessary factors in New York State to pierce the corporate veil and

execute on the assets of an entity which was a non-party to the underlying judgment. Moreover, there are no allegations in the U.S. Complaint that Assa or ACL are controlled by *Iran*. Rather, the allegation in the U.S. Complaint is that Assa is a "front company" for *Bank Melli*, which is not Iran. The undisputed facts are that Assa, a New York State Corporation, is wholly owned by ACL, a corporation incorporated in the Bailiwick of Jersey. ACL is owned by two private shareholders.

Moreover, there is no allegation that Iran created Assa and ACL in an effort to defraud Plaintiffs, who did not obtain their default judgment until 13 years after Assa and ACL were formed. Rather, Plaintiffs merely allege that Assa and ACL are "alter egos" of Bank Melli. This allegation does not meet the required standard for piercing the corporate veil pursuant to New York State law on garnishment of an "alter ego's" property. Because Plaintiffs have failed to allege any fact to permit them to pierce the corporate veil pursuant to New York State Law and hold Assa liable for its judgment on Iran (and MOIS), this Court should deny the Order to Show Cause because under these facts, CPLR § 5225(b) does not permit Plaintiffs to execute on Assa's or ACL's assets.[3]

Finally, because Plaintiffs have not met the first prong pursuant to CPLR § 5255, namely that Iran has an interest in the Building or in Assa's bank accounts, it is not incumbent upon this Court to analyze the second prong. Should this Court do so, it is respectfully submitted that Plaintiffs have not alleged Iran is entitled to the Building or to Assa's bank account, nor have Plaintiffs alleged that their alleged interest in the Building or Assa's bank accounts are superior to Assa's interest. Therefore, Plaintiffs' request fails.

---

[3] Plaintiffs have also failed to establish that service upon the judgment debtors has been made in accordance with CPLR § 5225. Therefore, for these reasons alone, the Order to Show Cause must be denied.

## III.  PLAINTIFFS ARE NOT PERMITTED TO SEEK PUNITIVE DAMAGES

Plaintiffs, having litigated this very issue in no less than four separate circuit courts of this nation, are well aware that, in exchange for having received payments pursuant to the VPA, they have relinquished their rights to collect punitive damages pursuant to TRIA. *Hegna Islamic Republic of Iran*, 402 F.3d 97, 99 (2nd Cir. 2005); *Hegna v. Islamic Republic Of Iran*, 376 F.3d 226, 231 (4th Cir. 2004). *See also, Hegna v. Islamic Republic of Iran*, 376 F.3d 485, 3 A.L.R. Fed. 2d 635 (5th Cir. 2004); *Hegna v. Islamic Republic of Iran*, 380 F.3d 1000 (7th Cir. 2004); *Hegna v. Islamic Republic of Iran*, 299 F. Supp. 2d 229 (S.D.N.Y. 2004), judgment *aff'd* as modified, 402 F.3d 97 (2nd Cir. 2005). The fact that Plaintiffs have included a claim for punitive damages in their execution notices and in the Order to Show Cause under these circumstances militates, at a minimum, to an order forbidding the Plaintiffs from seeking punitive damages from Assa or ACL pursuant to TRIA in the future.

Moreover, Plaintiffs do not allege that Assa or ACL are agencies or instrumentalities of MOIS, so their request for an order permitting them to execute on Assa's or ACL's assets to satisfy their punitive judgment award is null and should be denied and the writs should be quashed.

## IV.  ASSA AND ACL HAVE THE RIGHT TO AN ORDER QUASHING THE WRITS AND RELEASING THE PROPERTY FROM PLAINTIFFS' LEVY

FRCP 69(a) and CPLR § 5240 provide Assa and ACL with the right to obtain an order quashing the Plaintiffs' writs of execution and attachment, and for an order releasing Assa's and ACL's property from the Plaintiffs' levy. FRCP 69(a) provides that the "procedure on execution-and in proceedings supplementary..." must accord with the procedure of the state where the court

21

is located. FRCP 69(a).  CPLR § 5240 provides that the court may "make an order denying, limiting…or modifying the use of any enforcement procedure."  Accordingly, for all the reasons stated *supra*, this Court should quash the Plaintiffs' writs, release Assa's and ACL's property from the Plaintiffs' levy, and forbid the Plaintiffs from seeking to enforce any punitive damage award against Assa and ACL in the future due to their recovery and waiver pursuant to the VPA.

## V.    INTERNATIONAL LAW BARS THIS ACTION

Assa and ACL respectfully incorporate by reference the arguments in Assa and ACL's motion to dismiss the Complaint in the matter of *U.S. v. All Right, Title and Interest of Assa Corp., et al*, Docket No. 08-cv-10934, namely that the Treaty of Amity bars this Court from issuing a Turn-Over Order.

## CONCLUSION

For all the reasons stated herein, and for the reasons stated in the Memorandum of Law in support of Assa and ACL's motion to dismiss the U.S. Complaint, which reasons are incorporated herein, it is respectfully requested that the Order to Show Cause be denied, and that the cross-motion for an order quashing the Plaintiffs' writs of execution and attachment, for an order releasing Assa's and ACL's property from the Plaintiffs' levy, and for an order enjoining the Plaintiffs' from issuing future writs against Assa's and ACL's property, or at a minimum, enjoining the Plaintiffs from issuing future writs against Assa's and ACL's property where Plaintiffs seek to execute on their punitive damages award, be granted.

Dated: New York, New York
      July 8, 2009

                              ROSEN LIVINGSTON & CHOLST LLP

                              By: _____
                                  Peter I. Livingston, Esq.
                                  Deborah B. Koplovitz, Esq.
                                  275 Madison Avenue, Suite 500
                                  New York, New York 10016
                                  pil@rosenlivingston.com
                                  dk@rosenlivingston.com
                                  Tel (212) 687 – 7770
                                  Fax (212) 687-8030

                                  Thomas G. Corcoran, Jr., Esq.
                                  Laina Lopez, Esq.
                                  BERLINER, CORCORAN & ROWE, L.L.P.
                                  Attorneys for Assa Corp. and Assa Co. Ltd.
                                  1101 Seventeenth Street, N.W.
                                  Suite 1100
                                  Washington, D.C. 20036
                                  tgc@bcr-dc.com
                                  lcl@bcr-dc.com
                                  Tel. (202) 293-5555
                                  Fax (202) 293-9035